UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
-------------------------------------------------------------X
KEVIN MURRAY, SHARON GRAVES, and JOSEPH LAWLER

Plaintiffs,

v.

KEOLIS COMMUTER SERVICES, LLC

Defendant
-------------------------------------------------------------X

## COMPLAINT

## THE PARTIES

1. The plaintiff, Kevin Murray, is a resident of Attleboro, Massachusetts.

2. The plaintiff, Joseph Lawler, is a resident of Woonsocket, Rhode Island.

3. The plaintiff, Sharon Graves, is a resident of Providence, Rhode Island.

4. The defendant is a railroad carrier corporation providing railroad transportation, in interstate commerce by rail and operates a railroad system and railroad yards within the jurisdiction of this Court and in various other States, with a usual place of business in Massachusetts.

5. Prior to February 10, 2017, and at all times hereinafter mentioned, the defendant employed the plaintiff, Sharon Graves, as a carman under its direction, supervision and control and in furtherance of defendant's business in interstate commerce.

6. Prior to February 10, 2017, and at all times hereinafter mentioned, the defendant employed the plaintiff, Joseph Lawler, as a car inspector under its direction, supervision and control and in furtherance of defendant's business in interstate commerce.

7.     Prior to February 10, 2017, and at all times hereinafter mentioned, the defendant employed the plaintiff, Kevin Murray, as a carman under its direction, supervision and control and in furtherance of defendant's business in interstate commerce.

8.     Prior to February 10, 2017, and at all times hereinafter mentioned, the defendant maintained, operated and controlled the Pawtucket Layover Facility in Pawtucket, Rhode Island which contained defendant's tracks, rails, switches, sidings, roadbeds and appurtenances thereto, over, through and upon which the defendant operated engines, trains and cars under its control and direction.

9.     During all times herein mentioned, the defendant was and is engaged in interstate commerce by providing railroad transportation among multiple states.

## JURISDICTION AND VENUE

10.    The plaintiff brings the First Cause of Action against the defendant for violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 (FRSA).

11.    The plaintiff brings the Second Cause of Action against the defendant for violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 (FRSA).

12.    The plaintiff brings the Third Cause of Action against the defendant for violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 (FRSA).

13.    This Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act, 49 U.S.C. § 20109(d)(3).

14.    Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, because defendant resides in this District and/or because defendant does business in this District.

## PROCEDURAL FACTS

15.    On July 25, 2017, the plaintiff Sharon Graves, filed a FRSA Complaint with the Secretary of Labor's Regional OSHA Whistleblower Office.  That was within 180 days from the date the plaintiff became aware of the defendant's adverse or unfavorable personnel action against her.

2

16.     On July 25, 2017, the plaintiff Joseph Lawler, filed a FRSA Complaint with the Secretary of Labor's Regional OSHA Whistleblower Office. That was within 180 days from the date the plaintiff became aware of the defendant's adverse or unfavorable personnel action against him.

17.     On August 15, 2017, the plaintiff Kevin Murray, filed a FRSA Complaint with the Secretary of Labor's Regional OSHA Whistleblower Office. That was within 180 days from the date the plaintiff became aware of the defendant's adverse or unfavorable personnel action against him.

18.     The Regional OSHA Whistleblower Office commenced its investigation, and the plaintiffs fully cooperated with OSHA's investigation. However, Department of Labor did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the plaintiffs.

19.     Pursuant to Section (d)(3) of the FRSA, the plaintiffs have a statutory right to bring an original action in a United States district court for a jury trial regarding the Railroad's violations of the FRSA. 49 U.S.C. § 20109(d)(3).

20.     Pursuant to 49 U.S.C. § 20109(d)(3), the plaintiffs now bring this original action at law and equity for *de novo* review by the United States District Court of the District of Massachusetts, which Court has jurisdiction over this FRSA action and FELA action without regard to the amount in controversy.

## FACTS

21.     At the time of the defendant's FRSA violations, the plaintiffs were employed by the defendant and qualified as employees within the meaning of 49 U.S.C. § 20109.

22.     On February 10, 2017, the plaintiffs reported to work shortly after midnight to reports of numerous frozen doors and train cars. On February 9, 2017, the Pawtucket, Rhode Island facility was subjected to vicious winter weather on top of already huge snow accumulations. The temperature was dropping fast, from approximately 19 degrees Fahrenheit to 4 degrees Fahrenheit. Winds were gusting to 32 miles per hour.

23.     The crew that night consisted of Kevin Murray, Sharon Graves and Joseph Lawler. Among the several trains handled by the crew, there were 75-100 frozen doors. The train cars cannot be allowed into service with doors that will not fully and safely close, since it is a violation of federal safety regulations and presents an obvious safety hazard. In addition to freeing up the stuck doors, the crew was responsible for performing visual inspections of the inside and outside of the trains as well as brake tests, all in coordination with other crafts.

24.     After approximately four (4) hours of effort, the crew received a call from supervision essentially berating them for not clearing trains out fast enough. Approximately 30 minutes later, the Chief Mechanical Officer arrived and after looking over the situation, said to the crew he understood the problem and agreed there were more frozen doors than could be quickly dealt with. About two hours later, after working on the balance of the frozen cars, two more supervisors arrived wanting to take written statements from each of the crew. The crew was confronted about their failure to use deicer fluid, specifically new airport-grade deicer fluid. When the crew explained never knowing of this, they were shown a 55-gallon drum in a shed 50 yards away and told that it was kept at 175 degrees. When the crew said that would be scalding to use, the manager told them they should have used it because scalding is only 212 degrees or higher.

25.     On February 17, 2017, plaintiffs, Sharon Graves, Joseph Lawler and Kevin Murray, were charged with various company rule violations, stating:

**CHARGE ONE**

It is alleged that on Friday, February 10, 2017 while employed as a carman and while on duty at the Pawtucket Layover you failed to properly perform your duties, specifically de-ice coach doors, which resulted in delays to sets being dispatched from Pawtucket Layover as well as numerous residual delays.

**CHARGE TWO**

It is alleged that on Friday, February 10, 2017 while employed as a carman and while on duty at the Pawtucket Layover you failed to properly perform your duties, specifically you failed to report coach defects on KCS form MAP 1173.

The above are violations of the following Keolis Commuter Services (KCS) Code of Conduct sections:

## 1. Knowledge of the Rules

- KeolisCS Employees are required to be cognizant of and to comply with all rules, policies, procedures, and instructions issued by the Company. Employees whose duties are in any way affected by the official Timetable and/or Operating Rules must maintain the current Timetable and Operating Rules and must have them in their possession while on duty. Company provided and approved electronic versions are acceptable.

- Ignorance of the rules will not be accepted as an excuse for negligence or omission of duty, and violations of the rules may subject an employee to the imposition of discipline. Employees who observe any violation of the rules, policies/procedures must promptly report such violation to a supervisor or other Company official. Employees will cooperate and give testimony in company investigations of suspected infractions of KeolisCS's rules. Employees who fail to report rule violations may also be subject to discipline.

## 8. Behavioral Expectations for KeolisCS employees

- The basis for these behavioral expectations for all employees, both on duty and off, is the underlying theme that all employees should consider *"thinking like a passenger"* in all their actions related to the performance of their duties. Therefore this list includes both positive expectations as well as prohibitive guidance, and is clearly not all inclusive, as such a list is subject to change and the requirements of federal, state and local laws and applicable collective bargaining agreements.

- c. Ethical standards. Employees must always refrain from any activity that would give the appearance of conflict of interest, including soliciting or accepting gratuities related to performance of duties. This standard includes being honest in all statements, documents or investigations pertaining to company activities, and the proper use of company equipment, supplies and other materials.

- f. Protect and Preserve. All employees are expected to properly maintain and use all company and MBTA equipment, supplies and materials to enable proper and safe performance of their duties in the delivery of services.

**Prohibited Behaviors, (v) (vii) and (viii)**

v. Falsification of time reporting or other official records, including false medical or accident claims or reports.

vii. Failure to perform assigned duties, including unexcused absence (AWOL) or pattern absenteeism.

xiii. Any act identified in the KeolisCS/MBTA Operating agreement as conduct unbecoming an employee.

**9 – Safety**
The Company's highest priority is the safety and security of our employees, contractors and customers. Therefore, every employee must understand and obey all safety rules and requirements related to his/her position. If you are not aware of the safety rules applicable to you, then you should ask your supervisor for a copy as you will be held accountable for strict compliance with same. An employee who is found to be in violation of any safety rule will be subject to appropriate disciplinary action, up to and including termination.

**17 - Attending to Duties**

- Every KeolisCS employee is obligated to perform his/her duties properly, in accordance with the established standards for the particular position. This requires being alert to duties at all times. Any activity or behavior that distracts or prevents an employee from attending to duties is unacceptable behavior. Employees will not disrupt or interfere with other employees in the performance of their duties.
- It is essential for all employees to report to work on time and perform required duties during assigned hours. Employees must report to their supervisor in advance if they are unable to report to duty on time.

26.     Defendant initially refused to back down from the charges and proceeded to follow through with the hearing.

27.     On the first regularly scheduled haring date, one of defendant's supervisors was present and then left the hearing immediately before it started, saying he would be right back. However, he actually boarded a train out of state, causing the hearing to be adjourned.

28.     The hearing dates for each plaintiff were rescheduled, and the hearing for Joseph Lawler commenced. Part way through the first day of testimony, the railroad changed its position, and said it would rescind the charges.

29.     The charges were backed off only after the complaint was filed with OSHA.

30.     Defendant's conduct, more specifically set forth below, caused, in whole or in part, the plaintiff to suffer various physical, psychological and/or economic harms.

## COUNT I
## Violation of FRSA

31.     The plaintiff Sharon Graves, adopts by reference and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if set forth under this cause of action.

32.     The plaintiff, Sharon Graves, engaged in protected activity under the FRSA when she refused to allow Railroad passenger cars into service that did not comply with Federal safety regulations. She further engaged in protected activity when she explained to her supervisor why she could not put train cars into service, to wit, the unsafe conditions.

33.     The defendant had knowledge of all the protected activities referenced above.

34.     The defendant took adverse or unfavorable actions against the plaintiff, Sharon Graves, in whole or in part due to plaintiff's protected activities.

35.     The adverse actions included bringing charges against plaintiff and proceeding to hearing.

36.     In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make her whole, including but not limited to: expungement of all references to any disciplinary action; lost benefits with interest; lost wages with interest; compensatory damages for economic losses due to defendant's conduct; compensatory damages for mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees.

## COUNT II
### Violation of FRSA

37.    The plaintiff, Joseph Lawler, adopts by reference and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if set forth under this cause of action.

38.    The plaintiff, Joseph Lawler, engaged in protected activity under the FRSA when he refused to allow Railroad passenger cars into service that did not comply with Federal safety regulations. He further engaged in protected activity when he explained to his supervisor why he could not put train cars into service, to wit, the unsafe conditions.

39.    The defendant had knowledge of all the protected activities referenced above.

40.    The defendant took adverse or unfavorable actions against the plaintiff, Joseph Lawler, in whole or in part due to plaintiff's protected activities.

41.    The adverse actions included bringing charges against plaintiff and proceeding to hearing.

42.    In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

43.    The defendant had knowledge of all the protected activities referenced above.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to: expungement of all references to any disciplinary action; lost benefits with interest; lost wages with interest; compensatory damages for economic losses due to defendant's conduct; compensatory damages for

mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees.

## COUNT III
### Violation of FRSA

44.     The plaintiff, Kevin Murray, adopts by reference and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if set forth under this cause of action.

45.     The plaintiff, Kevin Murray, engaged in protected activity under the FRSA when he refused to allow Railroad passenger cars into service that did not comply with Federal safety regulations. He further engaged in protected activity when he explained to his supervisor why he could not put train cars into service, to wit, the unsafe conditions.

46.     The defendant had knowledge of all the protected activities referenced above.

47.     The defendant took adverse or unfavorable actions against the plaintiff, Kevin Murray, in whole or in part due to plaintiff's protected activities.

48.     The adverse actions included bringing charges against plaintiff.

49.     In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

50.     The defendant had knowledge of all the protected activities referenced above.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to: expungement of all references to any disciplinary action; lost benefits with interest; lost wages with interest; compensatory damages for economic losses due to defendant's conduct; compensatory damages for

mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees.

WHEREFORE, plaintiff Sharon Graves demands judgment against the defendant on Count I in the sum of FOUR HUNDRED FIFTY THOUSAND ($450,000.00) DOLLARS; plaintiff Joseph Lawler demands judgment against the defendant on Count II in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS; and, plaintiff Kevin Murray demands judgment against the defendant on Count III in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS together with the costs and disbursements of this action.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS

Respectfully submitted

Robert T. Naumes

By:_____
Naumes Law Group, LLC
2 Center Plaza, Suite 620
Boston, MA 02108
(617) 227-8444
Robert@NaumesLaw.com
Fed Bar # 09545 BBO# 367660


Local Counsel for:
FLYNN & WIETZKE, PC


By: _____
MARC WIETZKE
1205 Franklin Avenue
Garden City, NY 11530
Tel.: (516) 877-1234
E-mail: MWietzke@felaattorney.com
Motion Pro Hac Vice to Be Filed

10